## Mawn, Adr. *v.* Prudential Insurance Company of America, Appellant.

Argued October 29, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER, RHODES and HIRT, JJ.

*A. A. Vosburg,* with him *A. Floyd Vosburg,* of *Vosburg
& Vosburg,* for appellant.

*J. Donald Ryan,* for appellee.

OPINION BY CUNNINGHAM, J., March 12, 1941:

The action below was assumpsit in which the plaintiff
sought, as administrator of the estate of Bridget Mawn,
to recover $1,386.36, with interest from December 13,
1936, as the amount of the accidental death benefits
due under ten policies of life insurance, issued by the
defendant company upon the life of Bridget Mawn and
payable to her estate. The policies were issued between
August 18, 1919, and December 7, 1931. It is not con-
troverted that the death of the insured occurred on

December 13, 1936, while the policies were in force. The defendant company paid the face amount thereof, but rejected the demand of the plaintiff for payment of a like amount under a provision, applicable to each policy, and providing for the payment of "Accidental Death Benefits" under certain specified circumstances. The pertinent portion of the provision giving rise to the present litigation reads:

"Upon receipt of due proof that the Insured after attainment of age 15 and prior to the attainment of age 70, has sustained bodily injury, solely through external, violent and accidental means, occurring after the date of this policy and resulting in the death of the Insured within ninety days from the date of such bodily injury while this Policy is in force, and while there is no default in the payment of premium, the company will pay in addition to any other sums due under this Policy and subject to the provisions of this Policy an Accidental Death Benefit equal to the face amount of insurance stated in this Policy......"

The material averment of the statement of claim reads: "Her (the insured's) death was the result of an accident taking place in her home. The accident was a blow to her head caused when she fell to the floor after slipping. The blow to her head caused a concussion of her brain, which set up a chain of physical incidents leading to her death on December 13th, 1936."

The defenses interposed were: (a) that the proofs of death did not show that the insured had "sustained bodily injury, solely through external, violent and accidental means, ...... resulting in the death of the insured;" (b) that "due proof" of the insured's death from such injuries had not been submitted to the defendant; and (c) that the insured had attained the age of 70 prior to the happening of the alleged accident.

The result of a trial before LEACH, P. J., and a jury, was a verdict for the plaintiff for $1386.36, with interest from the date of death—a total of $1481.04. Defendant's

motion for judgment in its favor on reserved points and its motions for judgment, n. o. v., or a new trial, were denied, and it now appeals from the judgment entered upon the verdict.

An examination of the record discloses that it contains evidence which, if believed by a jury, would reasonably sustain a finding that the insured suffered an accidental fall in her home in which she sustained injuries resulting in her death at a hospital the next day. Margaret Gordon, her daughter, testified she was with the insured in her home in Scranton on December 12, 1936, and continued as follows: "Q. When you were in the bathroom that day describe to the court and jury what happened to your mother? A. She slipped on the bathroom rug and struck the back of her head; she slipped on the rug. Q. She struck the back of her head? A. Yes. Q. Was she rendered unconscious by that? A. Not quite. Q. What happened after that? A. I lifted her in a sitting position and called to a man on the outside to help put her in bed. Q. After that you got Dr. Moran? A. Yes."

Excerpts from the testimony of Dr. Timothy Moran read: "A. At the time I was called Mrs. Mawn was in a semi-conscious condition, she wasn't entirely unconscious, ...... she had on the back of her head lacerations with a small amount of bleeding, at the base of her head, ...... Later that afternoon she went into complete lapse of consciousness and became unconscious, and deeper and deeper; her pulse became very slow; ...... her lungs began to fill up with fluid, and when this happened I had consultation on the case, and the consultant agreed that we should remove her to the hospital as soon as possible, and do whatever we could do there, if there was anything to be done. However her condition became so critical she died the following day. Q. What caused this filling of the lungs with fluid? A. That filling of the lungs with fluid was the result of circulatory failure, which was caused by

the weakening of the heart from the accident, in my opinion. Q. The blow on the head? A. That is right. ...... Q. In your opinion was the blow on the head the cause of Bridget Mawn's death? ...... A. In my opinion the accident was the direct cause of death." In his certificate, forming part of the proofs of death and hereinafter referred to, Dr. Moran gave "broncho-pneumonia" as the immediate cause of death and "concussion of brain," resulting from a fall in the house, and "possible cerebral hemorrhage" as contributing causes.

There was a conflict of expert medical opinion with relation to a causal connection between the fall and the death. Dr. M. T. O'Malley was called by the defendant. He had never attended the decedent but had listened to Dr. Moran's testimony. Dr. O'Malley was of the opinion that bronchial pneumonia could not have occurred within twenty-four hours and that the fall was due to "a cardiac weakness." This conflict in the opinion evidence was adequately and fairly submitted to the jury by the trial judge.

The first and tenth assignments of error are based upon the refusal of the court below to enter judgment in favor of the defendant upon the following reserved points: "1. Under all the evidence in the case the verdict should be for the defendant," and "11. The proofs of death sent in do not constitute due proofs of a death due solely to accidental means; and therefore as no such proofs were furnished the condition precedent to recovery was not complied with."

The questions thus raised are closely related and require an examination of the proofs of death mailed to and received by the defendant, produced by it at the trial and offered in evidence by the plaintiff. They consist of two parts: The first filled out upon blanks furnished by the defendant and signed by plaintiff on December 14, 1936. In this portion the date of the insured's birth is given as March 3, 1873, and the place of birth as Scranton, Lackawanna County, Penna. The

second part consists of the certificate of the attending physician and is signed by Dr. Moran. It also, as we understand the record, was filled out upon a form prepared by the defendant. The material portion of that certificate reads: "What was the immediate cause of death? Ans.: Broncho pneumonia. What were the contributing causes of death? Ans. Concussion of brain resulting from fall in house. Possible cerebral hemorrhage. Was death due to accident, suicide or homicide? Ans: Yes. Fell in home striking head on edge of bathtub. Rendered unconscious."

Under all the evidence upon this branch of the case these points could not properly have been affirmed nor was the defendant entitled to judgment in its favor thereon. In the opinion written by the trial judge in support of his refusal to enter judgment for defendant upon these points it is said, "...... there can be no question that the defendant had notice that the death of Bridget Mawn was accidental, and that when [it] paid the face of the claim [it was] making an underpayment." We are in entire agreement with that statement: *Stambler v. Order of Pente*, 159 Pa. 492, 494, 28 A. 301; *Astrin v. Metropolitan Life Insurance Co.*, 341 Pa. 120, 17 A. 2d 887; and *Hanrahan v. John Hancock Mutual Life Insurance Co.*, 143 Pa. Superior Ct. 557, 18 A. 2d 514.

In the Hanrahan case we had occasion to consider at length what constitutes "due proof" of an "accidental" death, within the meaning of a clause identical with the one here involved.

The ninth assignment is based upon the refusal of the trial judge to affirm the tenth point presented by the defendant reading: "The plaintiff is claiming under contracts, and under the terms of the same he would not be entitled to double indemnity for a death due solely to accidental means, if an accident concurred with a disease in producing the death. This is true even if the insured was under seventy years of age when the

accident and death occurred. There is no question of proximate cause involved, with respect to the cause of death of the insured. If some other cause concurred with an accident to produce death, then the plaintiff cannot recover." This point, as drawn, was properly refused. See *The Real Estate Trust Company of Philadelphia, Trustee, v. Metropolitan Life Insurance Company*, 340 Pa. 533, 17 A. 2d 416. None of the policies in this case contains an additional "disease and infirmity" clause, and it is equally true here, as it was in the Hanrahan case, that nothing in the opinion in the Real Estate Trust Case is of any assistance to the present defendant. Reference may also be made to *Gyulai v. Prudential Insurance Company of America*, 135 Pa. Superior Ct. 73, 4 A. 2d 824.

The question of the age of the insured on December 12, 1936, was one of fact. In the part of the proofs of death signed by plaintiff the date of her birth was stated as March 3, 1873, making her between 63 and 64 years of age at the time of her accidental injury. At the trial, the defendant contended she was born March 16, 1865; if so, she was past 71 when injured. At the instance of counsel for the defendant, the trial judge directed the jury to make a special finding upon the question: "Was [the insured in this case] born on March 16, 1865"? Along with their general verdict of $1481.04 in favor of the plaintiff, the jury answered the specific question: "No." It is now argued that the answer is capricious and should, therefore, be disregarded. This contention necessitates a review of the evidence upon this branch of the case.

On behalf of the defendant the trial judge admitted in evidence certified copies of three baptismal records in the custody of St. Peter's Cathedral, Scranton: the first, a record under date of March 19, 1865, of the baptism of "Bridget Spellman, born March 16, 1865, of John Spellman and Margaret Messet"; the second, a record under date of July 14, 1867, of the baptism

of John Spellman, born June 24, 1867, of John Spellman and Margaret Messet; and the third under date of December 30, 1870, of the baptism of Thomas Spellman, born December 30[?], 1870, of John Spellman and Margaret Messet.

Plaintiff, when called by defendant for cross-examination, testified he believed the names of the parents of the insured were John and Bridget Spellman; that he had never seen any of her brothers; but had heard her speak of a brother Thomas. He fixed the year of his marriage to the insured as 1888, and when asked whether her parents were then living, replied, "She was left an orphan when she was about three or four years old"—. a statement somewhat inconsistent with the third baptismal record above mentioned.

Counsel for plaintiff contended that certain endorsements on four of the policies in suit indicated the defendant company had investigated the age of the insured in June, 1936, and had accepted 1873 as the year of her birth. As a part of his case in chief, he was permitted to show, over the objection of counsel for defendant, that in policy No. 54,655,706, dated May 29, 1922, the age of the insured at her next birthday was stated in the application therefor as "forty-nine" and that it bore the following endorsement, signed by the secretary of the defendant on June 18, 1936: "The Company having been notified that the age of the insured under this policy should have been stated in the application as fifty years next birthday, the amount of insurance is therefore changed to $175, being the amount purchased by the premium specified in the policy at the age here stated. The amount of any paid-up additions and any non-forfeiture value shall be determined accordingly, subject to the terms and conditions of the policy."

If born in March, 1873, the insured was past 49 and under 50 when the application was made. The circumstances under which the endorsement was placed

upon the policy were, of course, known to the defendant, but were not disclosed by it at the trial. We are not convinced the trial judge erred in holding that this affirmative action of the defendant, when considered in connection with the absence of any supporting evidence of the identity of the insured with the child named in the first baptismal record above recited, was sufficient to entitle the plaintiff to go to the jury upon the question of the age of the insured; nor can we say that the inference drawn by the jury from all the evidence on the subject is capricious.

Complaint is made in the sixth assignment of the refusal of the trial judge to admit in evidence a record in the office of the Clerk of the Marriage License Bureau of Lackawanna County with relation to an application in 1886 for a license by "Frank Mahan" and "Bezzie Spellman," particularly as a niece of the insured had testified her aunt was "sometimes called Bezzie."

The following excerpt from the opinion of the court below contains a description of the record, as well as the reasons for its exclusion: "On the rule for new trial complaint is made that the court excluded an offer of the marriage license docket of 1886 between Frank Mahan and Bezzie Spellman, in which there is an erasure appearing stating that the age of Bezzie Spellman was seventeen years. There is no return of the marriage and no consent of the guardian. This was offered for the purpose of showing that the marriage license was one issued to the decedent and that the inference should be drawn that she was at that time over twenty-one years of age. As there was no return of marriage and no consent of guardian, the better inference is that upon discovery of the age the clerk at that time refused to issue the license until the woman returned and got the consent of the parent, which thing never happened. We believe that there is no abuse of discretion in refusing this proposed evidence. If it were true that it was the deceased and she was seventeen

years of age at that time, the evidence would be evidence for the plaintiff rather than for the defendant." In our opinion, the exclusion of this record did not amount to reversible error.

By the eleventh assignment complaint is made of the admission, over the objection of counsel for defendant, of the testimony of Margaret Roche, a daughter of a sister of the insured, to the effect that she often heard her mother say that both sisters were born in England. As the trial judge in his charge expressly directed the jury "to disregard that testimony," we deem it unnecessary to pass upon the question of its admissibility.

Merely by way of observation, it may be remarked that if the opinion of the Supreme Court in the above cited case of *Astrin v. Metropolitan Life Insurance Company* had been handed down prior to the trial of this case, some of the testimony offered on behalf of the plaintiff, tending to show notice to defendant's district superintendent at the time the proofs of death were being prepared of plaintiff's claim for double indemnity, would probably have been admitted.

Upon consideration of all the assignments, our conclusion is that the court below did not err in declining to enter judgment in favor of the defendant upon the whole record, and also that a new trial was properly refused.

Judgment affirmed.